MARYNA  MORSE, CLERK OF CIRCUIT COURT
SEMINOLE COUNTY
BK 05970 PGS 1031-1035
CLERK'S # 2005186621
RECORDED 10/27/2005 03:02:07 PM
MTG DOC TAX 1,329.30
INTANG TAX 759.52
RECORDING FEES 44.00
RECORDED BY L Woodley

**WHEN RECORDED MAIL TO:**
Bank of America, N.A.
FL9-100-02-10
P.O. Box 45247
Jacksonville, FL 32203-0329

This Modification of Mortgage prepared by:

Name:  Syble Toole, FL9-100-03-15  (Ln#4573635), Documentation Administrator
Company:  Bank of America, N.A.
Address:  9000 Southside Blvd, Jacksonville, FL 32256-0771

# MODIFICATION OF MORTGAGE

**THIS MODIFICATION OF MORTGAGE** dated April 21, 2005, is made and executed between **Mission Road Church of God in Christ, Inc., a Non-Profit corporation** whose address is **151 Mission Road, Oviedo, FL 32762** (referred to below as "Grantor") and **Bank of America, N.A.,** whose address is **FL9-100-02-10, P.O. Box 40329, Jacksonville, FL 32203-0329** (referred to below as "Lender").

**MORTGAGE.** Lender and Grantor have entered into a Mortgage dated April 18, 2005 (the "Mortgage") which has been recorded in Seminole County, State of Florida, as follows:

Recorded 10/15/03 in Book 05062 Page 1121 and modified by a Modification of Mortgage recorded 10/14/04 in Book 05485 Page 0391.

**REAL PROPERTY DESCRIPTION.** The Mortgage covers the following described real property located in Seminole County, State of Florida:

See Exhibit "A", which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as  151 Mission Road, Oviedo, FL 32762.

**MODIFICATION.** Lender and Grantor hereby modify the Mortgage as follows:

Grantor has requested and Lender has granted a Future Advance of $379,762.00, which advance is evidenced by that Promissory Note dated April 21, 2005 in the amount of $1,549,762.00 (the "Note"). The Note renews and modifies a Promissory Note dated October 7, 2004 in the original amount of $1,170,000.00 (the "Prior Note") of which $1,170,000.00 is currently outstanding. The Note increases the unpaid principal blance of the Prior Note by $379,762.00 and Documentary Stamp Tax and Intangible Tax due as a result of such increase are remitted herewith.  Documentary Stamp Tax and Intangible Tax due with respect to the Prior Note have been paid and are either affixed to the original Mortgage or the proper legend has been stated on the original Mortgage.

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications.  Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note").  It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it.  This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

**ADDRESS FOR NOTICES.** Notwithstanding anything to the contrary herein, all notices and communications to the Lender shall be directed to the following address:

Bank of America, N.A.
Jacksonville CCS; Attn:  Notice Desk
9000 Southside Blvd.,  Bldg. 100, 3rd Floor
Jacksonville, FL  32256.

**GOVERNING LAW.** This Document will be governed by and interpreted in accordance with federal law and the laws of the State of Florida.



EXHIBIT
H

# MODIFICATION OF MORTGAGE
## (Continued)

Loan No: 4573635    Page 2

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF MORTGAGE IS DATED APRIL 21, 2005.

GRANTOR:

MISSION ROAD CHURCH OF GOD IN CHRIST, INC.

By: _____
Larry E. Perkins, President of Mission Road Church of God in Christ, Inc.

WITNESSES:

X _____

X _____

LENDER:

BANK OF AMERICA, N.A.

X _____
Authorized Signer

---

## CORPORATE ACKNOWLEDGMENT

STATE OF _Florida_ )
                                  ) SS
COUNTY OF _Seminole_ )

The foregoing instrument was acknowledged before me this ___21___ day of ___April___, 20_05_ by Larry E. Perkins, President of Mission Road Church of God in Christ, Inc., a Florida corporation, on behalf of the corporation. He or she is personally known to me or has produced _personally known_ as identification and did / did not take an oath.

_____
(Signature of Person Taking Acknowledgment)

_Hilda L Remh_
(Name of Acknowledger Typed, Printed or Stamped)

_Personal Banker II_
(Title or Rank)

_____
(Serial Number, if any)

HILDA L REMH
Notary Public - State of Florida
My Commission Expires Jan 22, 2007
Commission # DD179043
Bonded By National Notary Assn.

## MODIFICATION OF MORTGAGE
### (Continued)

Loan No: 4573635                                              Page 3

---

## LENDER ACKNOWLEDGMENT

STATE OF _Florida_ )
                                                    ) SS
COUNTY OF _Duval_ )

The foregoing instrument was acknowledged before me this _27th_ day of _Apil_ , 20_05_ by _Sybla Toole_ . He or she is personally known to me or has produced _N/A_ as identification and did / did not take an oath.

_Cynthia M. Gaines_
(Signature of Person Taking Acknowledgment)

_Cynthia M. Gaines_
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)

Cynthia M. Gaines
Commission #DD280340
Expires: Jan 11, 2008
Bonded Thru
Atlantic Bonding Co., Inc.

Begin at the Northwest corner of the East ½ of the Southwest ¼ of the Southwest ¼ of Section 9, Township 21 South, Range 31 East, Seminole County, Florida, run thence South 89°43'58" East 463.22 feet, thence South 00°08'21" East 420.00 feet, thence South 89°43'58" East 210.00 feet, thence South 00°08'21" East 310.25 feet, thence North 89°44'51" West 200.00 feet, thence North 00°08'21" West 188.75 feet, thence North 89°44'51" West 472.11 feet, thence North 00°12'13" West 541.50 feet to the Northwest corner and the Point of Beginning; LESS AND EXCEPT Road Right-of-Way deeded to the State of Florida in Official Records Book 2269, Page 479.

AND

Beginning 1335 feet East and 440 feet North of the Southwest corner of the Southwest ¼ of the Southwest ¼ of Section 9, Township 21 South, Range 31 East, Seminole County, Florida, run North 150 feet, thence West 200 feet, thence South 150 feet, thence East 200 feet to the Point of Beginning.

Begin at the Northwest corner of the East ½ of the Southwest ¼ of the Southwest ¼ of Section 9, Township 21 South, Range 31 East, Seminole County, Florida, run thence South 89°43'58" East 463.22 feet, thence South 89°43'58" East 210.00 feet, thence South 00°08'21" East 310.25 feet, thence North 89°44'51" West 200.00 feet, thence North 00°08'21" West 188.75 feet, thence North 89°44'51" West 472.11 feet, thence North 00°12'13" West 541.50 feet to the Northwest corner and the Point of Beginning; LESS AND EXCEPT Road Right-of-Way deeded to the State of Florida in Official Records Book 2269, Page 479.

AND

Beginning 1335 feet East and 440 feet North of the Southwest corner of the Southwest ¼ of the Southwest ¼ of Section 9, Township 21 South, Range 31 East, Seminole County, Florida, run North 150 feet, thence West 200 feet, thence South 150 feet, thence East 200 feet to the Point of Beginning.





EXHIBIT

I

# PROMISSORY NOTE

| Borrower: | Mission Road Church of God in Christ, Inc.<br>151 Mission Road<br>Oviedo, FL 32762 | Lender: | Bank of America, N.A.<br>CCS-Small Business/Premier<br>FL9-100-02-10<br>P.O. Box 40329<br>Jacksonville, FL 32203-0329 |
|---|---|---|---|

**Principal Amount: $1,549,762.00**                                            **Date of Note: April 21, 2005**

**PROMISE TO PAY.** Mission Road Church of God in Christ, Inc. ("Borrower") promises to pay to Bank of America, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Five Hundred Forty-nine Thousand Seven Hundred Sixty-two & 00/100 Dollars ($1,549,762.00), together with interest on the unpaid principal balance from April 21, 2005, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule:

3 monthly consecutive interest payments, beginning May 8, 2005, with interest calculated on the unpaid principal balances at an interest rate described below; 180 monthly consecutive principal and interest payments of $13,909.69, beginning August 8, 2005, with interest calculated on the unpaid principal balances at an interest rate of 6.875% per annum. The final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.

Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the rate of interest publicly announced from time to time by the Lender as its Prime Rate. The Prime Rate is set by the Lender based on various factors, including the Lender's costs and desired return, general economic conditions and other factors, and is used as a reference point for pricing some loans. The Lender may price loans to its customers at, above, or below the Prime Rate. Any change in the Prime Rate shall take effect at the opening of business on the day specified in the public announcement of a change in the Lender's Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each date of such change in the index. Borrower understands that Lender may make loans based on other rates as well. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 2.000 percentage points over the Index. NOTICE: Under no circumstances will the effective rate of interest on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT PENALTY.** Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: If the original principal amount of this Note is greater than $500,000.00, Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default.) Unless prohibited by law, Borrower agrees to pay a prepayment fee if this Note is paid in full before its fifth anniversary date. The fee shall be in the amount of one percent of the original principal amount of the Note. Borrower agrees to pay the Prepayment Fee even if the prepayment is made following Lender's acceleration of this Note due to a default by Borrower, or by reason of any transfer giving Lender the right to accelerate the maturity of this Note. No prepayment fee will be assessed after five years. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank of America, N. A., FL9-100-02-10, P. O. Box 45247, Jacksonville, FL 32203-0329. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank of America, N.A., FL9-100-02-10, P.O. Box 45247 Jacksonville, FL 32203-0329.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 4.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 8.000 percentage points over the Index, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

# PROMISSORY NOTE
## (Continued)

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of any County, State of Florida.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**ARBITRATION.** (a) This paragraph concerns the resolution of any controversies or claims between the parties, whether arising in contract, tort or by statute, including but not limited to controversies or claims that arise out of or relate to: (i) this agreement (including any renewals, extensions or modifications); or (ii) any document related to this agreement (collectively a "Claim"). For the purposes of this arbitration provision only, the term "parties" shall include any parent corporation, subsidiary or affiliate of the Bank involved in the servicing, management or administration of any obligation described or evidenced by this agreement.

(b)  At the request of any party to this agreement, any Claim shall be resolved by binding arbitration in accordance with the Federal Arbitration Act (Title 9, U. S. Code) (the "Act"). The Act will apply even though this agreement provides that it is governed by the law of a specified state.

(c)  Arbitration proceedings will be determined in accordance with the Act, the applicable rules and procedures for the arbitration of disputes of JAMS or any successor thereof ("JAMS"), and the terms of this paragraph. In the event of any inconsistency, the terms of this paragraph shall control.

(d)  The arbitration shall be administered by JAMS and conducted, unless otherwise required by law, in any U. S. state where real or tangible personal property collateral for this credit is located or if there is no such collateral, in the state specified in the governing law section of this agreement. All Claims shall be determined by one arbitrator; however, if Claims exceed $5,000,000, upon the request of any party, the Claims shall be decided by three arbitrators. All arbitration hearings shall commence within 90 days of the demand for arbitration and close within 90 days of commencement and the award of the arbitrator(s) shall be issued within 30 days of the close of the hearing. However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional 60 days. The arbitrator(s) shall provide a concise written statement of reasons for the award. The arbitration award may be submitted to any court having jurisdiction to be confirmed, judgment entered and enforced.

(e)  The arbitrator(s) will have the authority to decide whether any Claim is barred by the statute of limitations and, if so, to dismiss the arbitration on that basis. For purposes of the application of the statute of limitations, the service on JAMS under applicable JAMS rules of a notice of Claim is the equivalent of the filing of a lawsuit. Any dispute concerning this arbitration provision or whether a Claim is arbitratable shall be determined by the arbitrator(s). The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this agreement.

(f)  This paragraph does not limit the right of any party to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or nonjudicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights, or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies.

(g)  The filing of a court action is not intended to constitute a waiver of the right of any party, including the suing party, thereafter to require submittal of the Claim to arbitration.

# PROMISSORY NOTE
## (Continued)

**ADDITIONAL DEFAULTS.** Each of the following shall constitute an additional event of default ("Event of Default") under this Note:

**Event of Default Under Related Documents.** A default or additional event of default occurs under the terms of any promissory note, guaranty, pledge agreement, security agreement or other agreement or instrument executed by Borrower or any guarantor, pledgor, accommodation party or other obligor in connection with or relating to this Note.

**Judgment.** The entry of a judgment against any Borrower or guarantor, pledgor, accommodation party or other obligor which Lender deems to be of a material nature, in Lender's sole discretion.

**ASSIGNMENT.** Lender may sell or offer to sell this Note, together with any and all documents guaranteeing, securing or executed in connection with this Note, to one or more assignees without notice to or consent of Borrower. Lender is hereby authorized to share any information it has pertaining to the loan evidenced by this Note, including without limitation credit information on the undersigned, any of its principals, or any guarantors of this Note, to any such assignee or prospective assignee.

**COUNTERPARTS.** This Note may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

**PRE BILLING.** If the Borrower and Lender elect to use pre-billing calculation, for each payment date (the "Due Date") the amount of each payment debit will be determined as follows: On the 'Billing Date' Lender will prepare and mail to Borrower an invoice of the amounts that will be due on that Due Date ("Billed Amount"). (The "Billing Date" will be a date that is a specified number of calendar days prior to the Due Date, which number of days will be mutually agreed from time to time by Lender and Borrower.) The calculation of the Billed Amount will be made on the assumption that no new extensions of credit or payments will be made between the Billing Date and the Due Date, and that there will be no changes in the applicable interest rate. On the Due Date Lender will debit the Designated Account for the Billed Amount, regardless of the actual amount due on that date ("Accrued Amount"). If the Due Date does not fall on a Business Day, Lender shall debit the Designated Account on the first Business Day following the Due Date. For purposes of this Agreement, "Business Day" means a day other than Saturday, Sunday or other day on which commercial banks are authorized to close or are in fact closed in the state where the Lender's lending office is located. If the Billed Amount debited to the Designated Account differs from the Accrued Amount, the difference will be treated as follows: If the Billed Amount is less than the Accrued Amount, the Billed Amount for the following Due Date will be increased by the amount of the underpayment. Borrower will not be in default by reason of any such underpayment. If the Billed Amount is more than the Accrued Amount, the Billed Amount for the following Due Date will be decreased by the amount of the overpayment. Regardless of any such difference, interest will continue to accrue based on the actual amount of principal outstanding without compounding. Lender will not pay interest on any overpayment.

**AUTOMATIC PAYMENTS.** Borrower hereby authorizes Lender automatically to deduct from Borrower's account numbered 5489300740 the amount of any loan payment. If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment. At any time and for any reason, Borrower or Lender may voluntarily terminate Automatic Payments.

**TERMINATION OF AUTOMATIC PAYMENTS.** In the event that Borrower terminates the Automatic Payment arrangement with Lender, Borrower agrees that the interest rate under the Note will increase, at the discretion of the Lender, by one percentage point (1.00%) per annum over the rate of interest stated in the Note, and the amount of each interest installment will be increased accordingly. The effective rate of interest under the Note shall not in any event exceed the maximum rate permitted by law.

**FINAL AGREEMENT. BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THIS DOCUMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF, (B) THIS DOCUMENT SUPERSEDES ANY COMMITMENT LETTER, TERM SHEET OR OTHER WRITTEN OUTLINE OF TERMS AND CONDITIONS RELATING TO THE SUBJECT MATTER HEREOF, UNLESS SUCH COMMITMENT LETTER, TERM SHEET OR OTHER WRITTEN OUTLINE OF TERMS AND CONDITIONS EXPRESSLY PROVIDES TO THE CONTRARY, (C) THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES, AND (D) THIS DOCUMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

**ADDRESS FOR NOTICES.** Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed if to Borrower at the address shown near the beginning of this Note and if to Lender at the address set forth below. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers. Notwithstanding anything to the contrary herein, all notices and communications to the Lender shall be directed to the following address:

> Bank of America, N.A.
> Jacksonville CCS - Attn: Notice Address
> 9000 Southside Blvd., Bldg. 100, 3rd Floor
> Jacksonville, FL 32256.

**COMPLIANCE WITH LOAN DOCUMENTS.** Borrower acknowledges and agrees that its timely and complete compliance with all of the terms and conditions contained in the documents evidencing and securing the loan obligation is material consideration for the loan. Borrower's failure to timely and completely comply with each and every term and condition contained in the documents evidencing and securing the loan is, at Lender's option, an event of default under the loan. In addition to all other rights and remedies Lender has, Lender may, in its sole discretion, elect to waive such default or to forbear to exercise its rights and remedies for such default and may charge Borrowers a fee for agreeing to do so.

**GOVERNING LAW.** This Document will be governed by and interpreted in accordance with federal law and the laws of the State of Florida.

**APPRAISALS.** Borrower agrees to reimburse Lender for the cost of periodic appraisals of any real or personal property collateral securing the indebtedness hereunder, at such intervals as Lender may reasonably require. The appraisals may be performed by employees of Lender or by independent appraisers.

**MAINTENANCE OF PRINCIPAL DEPOSIT ACCOUNTS.** Borrower agrees to maintain its principal deposit accounts with Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to

# PROMISSORY NOTE
## (Continued)

charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

MISSION ROAD CHURCH OF GOD IN CHRIST, INC.

By: _____
Larry E. Perkins, President of Mission Road Church
of God in Christ, Inc.

## Florida Documentary Stamp Tax

Florida documentary stamp tax in the amount required by law has been paid with respect to this Note on the Modification of Mortgage securing this Note.

# THIRD AMENDMENT TO CONSTRUCTION LOAN AGREEMENT AND OTHER LOAN DOCUMENTS

This **THIRD AMENDMENT TO CONSTRUCTION LOAN AGREEMENT AND OTHER LOAN DOCUMENTS** (this "Amendment") is dated as of the 10th day of October, 2007, and is executed by and between **MISSION ROAD CHURCH OF GOD IN CHRIST, INC.**, a Florida non-profit corporation ("Borrower"), whose address is 151 Mission Road, Oviedo, Florida 32762, and **BANK OF AMERICA, N.A.**, a national banking association organized and existing under the laws of the United States, whose mailing address is Bank of America, N.A., FL9-100-02-10, P.O. Box 45247, Jacksonville, Florida 32203-0329 ("Lender").

## RECITALS:

A.  Pursuant to that certain Construction Loan Agreement dated October 8, 2003 entered into by and between Lender and Borrower, as amended by that certain Amendment to Construction Loan Agreement dated October 7, 2004, as amended by that certain Amendment to Construction Loan Agreement dated April 21, 2005 (as amended, the "Loan Agreement"), Lender made a loan (the "Loan") to Borrower, as evidenced by that certain Promissory Note, dated as of October 8, 2003 in the original principal amount of **ONE MILLION SEVENTY THOUSAND FOUR HUNDRED AND NO/100 DOLLARS ($1,070,400.00)**, as amended and restated by that certain Promissory Note dated as of October 7, 2004 in the original principal amount of **ONE MILLION ONE HUNDRED SEVENTY THOUSAND AND NO/100 DOLLARS ($1,170,000.00)**, as amended and restated by that certain Promissory Note dated April 21, 2005 in the original principal amount of **ONE MILLION FIVE HUNDRED FORTY NINE THOUSAND SEVEN HUNDRED SIXTY TWO AND NO/100 DOLLARS ($1,549,762.00)** (collectively, the "Original Note") to be amended and increased by that certain Amended and Restated Future Advance Promissory Note of even date herewith by and between Borrower and Lender (the "Amended Note"; the Original Note and Amended Note, sometimes hereinafter collectively referred to as the "Note");

B.  The Loan is secured by: (i) that certain Construction Mortgage given by Borrower in favor of Lender dated October 8, 2003, recorded in Official Records Book 5062, Page 1121, Public Records of Seminole County, Florida, as amended by (a) that certain Modification of Mortgage dated October 7, 2004, recorded in Official Records Book 5485, Page 391, Public Records of Seminole County, Florida (b) that certain Modification of Mortgage dated April 21, 2005, recorded in Official Records Book 5970, Page 1031, Public Records of Seminole County, Florida, as further amended by (c) that certain Notice of Future Advance and Mortgage Modification Agreement executed by Borrower in favor of Lender of even date herewith to be recorded in the Public Records of Seminole County, Florida (as modified, the "Mortgage"); (ii) that certain UCC-1 Financing Statement listing Borrower as Debtor and Lender as Secured Party, to be filed in the Public Records of Seminole County, Florida and with the Florida Secured Transaction Registry (the "Financing Statements"), (iii) that certain Assignment of Rents from Borrower to and in favor of Lender dated October 8, 2003 and recorded in Official Records Book 5062, Page 1132, Public Records of Seminole County, Florida (the "Assignment") and (iv) such other Loan Documents of even date therewith as more particularly described in the Loan Agreement;

C.  In addition to the Note, the Loan Agreement, the Mortgage, the Financing Statements, and the Assignment, Borrower and Lender have executed other documents in connection with the Loan (collectively called the "Other Loan Documents");

D.  In May of 2006, Borrower defaulted under the Loan by failing to make interest payments when due (the "Default") and Borrower and Lender subsequently entered into that certain Short Term Forbearance Agreement dated January 24, 2007, in which on certain terms and conditions Lender

**EXHIBIT**

J

formally agreed to not exercise its legal and/or contractual remedies given to Lender under the Note and Mortgage for Borrower's Default in exchange for a fee;

E.   Borrower has heretofore requested Lender, pursuant to that certain Amended Note of even date herewith, to receive the final draw and a future advance under the Loan and extend the Maturity Date of the Loan (the "Desired Amendments"), which Lender has agreed to do in consideration of Borrower executing the Amended Note, this Amendment, that certain Waiver and Release Agreement (the "Release") and other documents in connection therewith; and

F.   To effect, *inter alia*, the Desired Amendments, Borrower and Lender have agreed to execute this Amendment.

<u>AGREEMENT:</u>

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.   <u>Recitals and Terms</u>.  The foregoing Recitals are true and correct, and are incorporated herein by this reference.  Capitalized terms used and not defined herein shall have the meanings assigned thereto in the Loan Agreement.

2.   <u>Modification To Loan Agreement</u>.  Lender and Borrower hereby agree to the following modifications:

(a)   The first sentence in the Section titled "Loan" on Page 1 shall be amended to read as follows:

**Loan.**  The Loan shall be in an amount not to exceed the principal sum of $1,607,762.00 and shall bear interest on so much of the principal sum as shall be advanced pursuant to the terms of this Agreement and the Related Documents.

(b)   Section titled "Insurance" on Page 3 shall be amended to read as follows:

**Insurance.**  Borrower shall maintain insurance with responsible insurance companies on such of its properties, in such amounts and against such risks as is customarily maintained by similar businesses operating in the same vicinity, specifically to include fire and extended coverage insurance covering all assets, business interruption insurance, workers compensation insurance and liability insurance, all to be with such companies and in such amounts as are satisfactory to Lender and providing for at least 30 days prior notice to Lender of any cancellation thereof. Satisfactory evidence of such insurance will be supplied to Lender prior to funding under the Loan and 30 days prior to each policy renewal.

(c)   Section titled "Construction of the Project" on page 6 shall be deleted in its entirety.

(d)   Section titled "Cessation of Construction" on page 8 shall be deleted in its entirety.

3.   <u>Modifications to Other Loan Documents</u>.

(a)     Lender and Borrower hereby agree that any reference to the "Obligations", "liabilities", "Liabilities", "Note" or "Promissory Note" as set forth in any of the Loan Documents shall be deemed to include reference to the Amended Note.

4.     **Reaffirmation of Representations and Warranties**.  Borrower hereby reaffirms to Lender each of Borrower's representations and warranties, covenants and agreements set forth in the Loan Agreement and the Other Loan Documents with the same force and effect as if each were fully restated herein and made as of the date hereof, and Borrower hereby certifies to Lender that no default or event of default is presently occurring under the Loan Agreement or the Other Loan Documents.

5.     **No Claims or Offsets**.  Borrower hereby acknowledges and certifies to Lender that, as of the date of this Amendment, there are no counterclaims, defenses or offsets whatsoever against Lender with respect to the Loan Agreement or other Loan Documents, or with respect to any documents, instruments and/or agreements executed in connection therewith.

6.     **No Other Changes**.  Except as otherwise set forth in this Amendment, the Loan Agreement shall remain unchanged and in full force and effect.

7.     **Counterparts**.  This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Amendment.

*[SIGNATURE PAGE FOLLOWS]*

**IN WITNESS WHEREOF,** Borrower and Lender have executed this Amendment as of the above written date.

**WITNESSES:**                                              **BORROWER:**

**MISSION ROAD CHURCH OF GOD IN CHRIST, INC.,** a Florida non-profit corporation

Print Name: _April M Hayden_                    By: _____
                                                                          **LARRY E. PERKINS,** President
Print Name: _Terri Walker_


**LENDER:**

**BANK OF AMERICA, N.A.,** a national banking association

Print Name:_____              By:_____
                                                                          **JAY JAIRAM,**
Print Name:_____                   ITS: _____

## AMENDED AND RESTATED FUTURE ADVANCE PROMISSORY NOTE

$1,607,762.00                                                                October 10, 2007

     **FOR VALUE RECEIVED, MISSION ROAD CHURCH OF GOD IN CHRIST, INC.**, a Florida non-profit corporation ("Borrower"), hereby promises to pay to the order of **BANK OF AMERICA**, a national banking association (together with any and all of its successors and assigns and/or any other holder of this Note, "Lender"), without offset, in immediately available funds in lawful money of the United States of America, to Bank of America, N.A., FL9-100-02-10, P.O. Box 45247, Jacksonville, Florida 32203-0329 the principal sum of **ONE MILLION SIX HUNDRED SEVEN THOUSAND, SEVEN HUNDRED SIXTY TWO AND NO/100 DOLLARS ($1,607,762.00)** (or the unpaid balance of all principal advanced against this Note, if that amount is less), together with interest on the unpaid principal balance of this Note from day to day outstanding as hereinafter provided, all in accordance with the terms and conditions of this Amended and Restated Promissory Note (the "Note") and in accordance with that certain Construction Loan Agreement dated October 8, 2003, by and between Borrower and Lender, as amended by that certain Amendment to Construction Loan Agreement dated October 7, 2004, as amended by that certain Amendment to Construction Loan Agreement dated April 21, 2005 by and between Borrower and Lender and as further amended by that certain Third Amendment to Construction Loan Agreement and Other Loan Documents of even date herewith by and between Borrower and Lender (together, the "Loan Agreement").

     This Note is executed and delivered by Borrower to (i) amend, and restate in its entirety that certain Promissory Note, dated as of October 8, 2003 in the original principal amount of **ONE MILLION SEVENTY THOUSAND FOUR HUNDRED AND NO/100 DOLLARS ($1,070,400.00)**, as amended and restated by that certain Promissory Note dated as of October 7, 2004 in the original principal amount of **ONE MILLION ONE HUNDRED SEVENTY THOUSAND AND NO/100 DOLLARS ($1,170,000.00)**, as amended and restated by that certain Promissory Note dated April 21, 2005 in the original principal amount of **ONE MILLION FIVE HUNDRED FORTY NINE THOUSAND SEVEN HUNDRED SIXTY TWO AND NO/100 DOLLARS ($1,549,762.00)** (together, the "Prior Note"), and (ii) to evidence a future advance in the amount of **FIFTY EIGHT THOUSAND AND NO/100 DOLLARS ($58,000.00)** the (the "Future Advance"). It is the intention of Borrower and Lender that this Note shall not extinguish the Prior Note or the obligations evidenced thereby, and this Note shall not be construed as a refinancing, substitution, or a novation of the Prior Note or any of the other Loan Documents (as hereinafter defined). In no event shall this Note or anything contained herein be deemed a waiver, discharge or novation of the Prior Note or any of the other Loan Documents or the debt secured thereby, and it is understood and agreed between the parties that the other Loan Documents shall continue unimpaired as security for the performance of Borrower's obligations under the Prior Note, as herein modified, all in accordance with the purposes, provisions, terms, covenants and conditions set forth in the Prior Note and the other Loan Documents, all of which shall remain in full force, operation and effect. However, the indebtedness represented by the Prior Note, and the obligations thereof, shall be paid in accordance with the terms and conditions set forth herein.

     Section 1.    Security; Loan Documents. The security for this Note includes (1) that certain Construction Mortgage given by Borrower in favor of Lender dated October 8, 2003, recorded in Official Records Book 5062, Page 1121, Public Records of Seminole County, Florida, as amended by (a) that certain Modification of Mortgage dated October 7, 2004, recorded in Official Records Book 5485, Page 391, Public Records of Seminole County, Florida, (b) that certain Modification of Mortgage dated April 21, 2005, recorded in Official Records Book 5970, Page 1031, Public Records of Seminole County,

**EXHIBIT**

*K*

ORLA 465443.3

Florida and (c) that certain Notice of Future Advance and Mortgage Modification Agreement of even date herewith to be recorded in the Public Records of Seminole County, Florida (as the same may from time to time be amended, restated, modified or supplemented, the "Mortgage"), encumbering certain real and personal property more particularly described therein (the "Property"), (2) that certain Assignment of Rents given by Borrower in favor of Lender dated October 8, 2003, recorded in Official Records Book 5062, Page 1132, Public Records of Seminole County, Florida (the "Assignment") (3) that certain UCC-1 Financing Statement listing Borrower as Debtor and Lender as Secured Party to be recorded (a) in the Public Records of Seminole County, Florida and (b) with the Florida Secured Transaction registry (together hereinafter referred to as the "Financing Statements") and (4) other agreements by and between Borrower and Lender. This Note, the Loan Agreement, the Mortgage, the Assignment, the Financing Statements and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note (the "Loan"), as the same may from time to time be amended, restated, modified or supplemented, are herein sometimes called individually a "Loan Document" and together the "Loan Documents."

        Section 2.    Interest Rate. Interest will be charged on unpaid principal until the full amount of principal under the Loan has been paid. The unpaid principal amount from time to time outstanding hereunder shall bear interest at the rate of 6.875% per annum (the "Interest Rate"). The annual Interest Rate for this Note is computed on a 365/360 day basis, that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance multiplied by the actual number of days the principal balance is outstanding.

        Section 3.    Payment Schedule and Maturity Date. Prior to maturity, accrued and unpaid principal and interest payments in the amount of $14,379.02 shall be due and payable in arrears on the 8th day of each month commencing on November 8, 2007. The entire principal balance of this Note then unpaid, together with all accrued and unpaid interest and all other amounts payable hereunder and under the other Loan Documents, shall be due and payable in full on October 21, 2022 (the "Maturity Date"), the final maturity of this Note. All payments of principal and interest shall be made in lawful currency of the United States of America which shall be legal tender in payment of all debts, public and private, at the time of payment.

        Section 4.    Prepayment. Upon prepayment of this Note, Borrower must pay the following prepayment penalty: If the original principal balance of this Note is greater than $500,000, Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default). Unless prohibited by law, Borrower agrees to pay a prepayment fee if this Note is paid in full before its fifth anniversary date. The fee shall be in the amount of one percent (1%) of the original principal amount of the Note. Borrower agrees to pay the prepayment fee even if the prepayment is made following Lender's acceleration of this Note due to a default by Borrower or by reason of any transfer giving Lender the right to accelerate the maturity of this note. No prepayment fee will be assessed after five (5) years. Except the foregoing, Borrower may pay all or a portion of the Loan before it is due. Unless agreed to by Lender in writing, early payments will not relieve the Borrower of Borrower's obligation to continue to make payments in accordance with the schedule set forth in this Note. The Borrower will give the Lender irrevocable written notice of the Borrower's intention to make the prepayment, specifying the date and amount of the prepayment. The notice must be received by the Lender at least five (5) banking days in advance of the prepayment. The prepayment will be applied to the most remote payment of principal due under the Loan.

        Section 5.    Late Charges. Should Borrower fail to pay the installments of interest and principal on any due date provided for herein or within fifteen (15) days thereafter, then Borrower further

promises to pay a late payment charge equal to four percent (4%) of the amount of the unpaid installment as liquidated compensation to Lender for the extra expense to Lender to process and administer the late payment, Borrower agreeing, by execution hereof, that any other measure of compensation for a late payment is speculative and impossible to compute. This provision for late charges shall not be deemed to extend the time for payment or be a "grace period" or "cure period" that gives Borrower a right to cure a default hereunder or under the Loan Agreement. Imposition of late charges is not contingent upon the giving of any notice or lapse of any cure period provided for in the Mortgage and shall not be deemed a waiver of any right or remedy of Lender, including without limitation, acceleration of this Note.

Section 6.    Default.  Any failure of Borrower or any guarantor to comply with any term, covenant, or condition of this Note, including without limitation, Borrower's failure to pay principal, interest, or expenses when same shall become due or the existence of any default under the Loan Agreement or any Loan Document shall be deemed, at the option of Lender, a Default under this Note.

Section 7.    Acceleration.  Upon the occurrence of a Default hereunder or under the terms of any one or more of the Loan Documents, Lender may declare the then outstanding principal and all accrued but unpaid interest immediately due and payable and upon acceleration and thereafter this Note shall bear interest at the Default Rate, hereinafter defined, until all indebtedness evidenced hereby and secured by the Loan Documents has been paid in full.  Further, in the event of such acceleration, the Loan, and all other indebtedness of Borrower to Lender arising out of or in connection with the Loan shall become immediately due and payable, without presentation, demand, protest or notice of any kind, all of which are hereby waived by Borrower. Any judgment rendered on this Note shall bear interest at the Default Rate (as herein defined).

Section 8.    Default Rate.  After default or maturity or upon acceleration, and thereafter, the unpaid indebtedness then evidenced by this Note and due under and secured by the other Loan Documents shall bear interest at a fixed rate equal to the lesser of (a) the maximum rate then permitted under applicable law, or (b) twenty percent (20%) per annum.

Section 9.    Application of Payments.  All sums received by Lender for application to the Loan may be applied by Lender to late charges, expenses, costs, interest, principal, and other amounts owing to Lender in connection with the Loan in the order selected by Lender in its sole discretion.

Section 10.    Right of Set Off.  To the extent permitted by law, Lender reserves a right of set off in Borrower's accounts with Lender (whether checking, savings or some other account).  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.  However this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Borrower authorizes Lender to charge or set off all sums owing on the indebtedness against any and all such accounts.

Section 11.    Expenses.  In the event this Note is not paid when due on any stated or accelerated maturity date, or should it be necessary for Lender to enforce any other of its rights under the other Loan Documents, Borrower will pay to Lender, in addition to principal, interest and other charges due hereunder or under the other Loan Documents, all costs of collection or enforcement, including reasonable attorneys' fees, paralegals' fees, legal assistants' fees, costs and expenses, whether incurred with respect to collection, litigation, bankruptcy proceedings, interpretation, dispute, negotiation, trial, appeal, defense of actions instituted by a third party against Lender arising out of or related to the Loan, enforcement of any judgment based on this Note, or otherwise, whether or not a suit to collect such amounts or to enforce such rights is brought or, if brought, is prosecuted to judgment.

Section 12.        Address for Notices. Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed if to Borrower at the address shown near the beginning of this Note and if to Lender at the address set forth below. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers. Notwithstanding anything to the contrary herein, all notices and communications to the Lender shall be directed to the following address:

Bank of America, N.A.

Jacksonville BCS – Attn:  Notice Desk

9000 Southside Blvd., Bldg. 100, 3rd Floor,

Jacksonville, FL  32256

Section 13.     Compliance with Loan Documents. Borrower acknowledges and agrees that its timely and complete compliance with all of the terms and conditions contained in the documents evidencing and securing the loan obligation is material consideration for the Loan. Borrower's failure to timely and completely comply with each and every term and condition contained in the documents evidencing and securing the Loan is, at Lender's option, an event of default under the Loan. In addition to all other rights and remedies Lender has, Lender may, in its sole discretion, elect to waive such default or to forbear to exercise its rights and remedies for such default and may charge Borrower(s) a fee for agreeing to do so.

Section 14.     Waiver. All persons now or at any time liable for payment of this Note, whether directly or indirectly, including without limitation any guarantor, hereby waive presentment, protest, notice of protest and dishonor. The undersigned expressly consents to any extensions and renewals, in whole or in part, to the release of any or all guarantors or co-makers and any collateral security or portions thereof, given to secure this Note, and all delays in time of payment or other performance which Lender may grant, in its sole discretion, at any time and from time to time without limitation all without any notice or further consent of Borrower, and any such grant by Lender shall not be deemed a waiver of any subsequent delay or any of Lender's rights hereunder or under the Loan Agreement and/or the Loan Documents.

Section 15.     Automatic Payments. Borrower hereby authorizes Lender to automatically deduct the amount of any loan payment from Borrower's account #_____. If the funds in the account are insufficient to cover any payment Lender shall not be obligated to advance funds to cover the payment. At any time and for any reason Borrower or Lender may automatically terminate this provision. In the event Borrower terminates the automatic payments, at Lender's discretion, the Interest Rate will increase by one percentage point per annum.

Section 16.     Appraisals. Borrower agrees to reimburse Lender for the cost of periodic appraisals of the Property, at such intervals as Lender may reasonably require.

Section 17.    Deposit Accounts.  Borrower agrees to maintain its principal deposit accounts with Lender.

Section 18.    Usury.  In no event shall this or any other provision herein or in the Loan Agreement or Loan Documents permit the collection of any interest which would be usurious under the laws of the State of Florida.  If any such interest in excess of the maximum rate allowable under applicable law has been collected, Borrower agrees that the amount of interest collected above the maximum rate permitted by applicable law, together with interest thereon at the rate required by applicable law, shall be refunded to Borrower, and Borrower agrees to accept such refund, or, at Borrower's option, such refund shall be applied as a principal payment hereunder.

Section 19.    Patriot Act Notice.  Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains a loan.  Lender will ask for the Borrower's legal name, address, tax ID number or social security number and other identifying information.  Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of the Borrower, guarantors or other related persons.

Section 20.    Modification.  This Note may not be changed orally, but only by an agreement in writing signed by the Lender and Borrower.

Section 21.    Applicable Law.  This Note shall be governed by and construed in accordance with the laws of the State of Florida.

Section 22.    Notices.  All notices or other communications required or permitted to be given pursuant to the provisions of this Note shall be given in accordance with the notice provisions of the Loan Agreement.

Section 23.    Successors and Assigns.  The owner of this Note may, from time to time, sell or offer to sell the Loan evidenced by this Note, or interests therein, to one or more assignees or participants and is hereby authorized to disseminate any information it has pertaining to the Loan evidenced by this Note, including, without limitation, any security for this Note and credit information on Borrower, any of its principals and any guarantor of this Note, to any company affiliated with the owner of this Note, any assignee or participant, and to the extent, if any, specified in any such assignment or participation, such affiliated companies, assignee(s) or participant(s) shall have the rights and benefits with respect to this Note, the Loan Agreement and the Loan Documents as such person(s) would have if such person(s) were Lender hereunder.  The owner of this Note may also disclose any such information to any regulatory body having jurisdiction over Lender.  As used herein, the terms "Borrower" and "Lender" shall be deemed to include their respective heirs, personal representatives, successors and assigns.

Section 24.    Severability.  In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal, or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this Note operates or would prospectively operate to invalidate this Note, then and in any of those events, only such provision or provisions shall be deemed null and void and shall not affect any other provision of this Note.  The remaining provisions of this Note shall remain operative and in full force and effect and shall in no way be affected, prejudiced, or disturbed thereby.  In the event any provisions of this Note are inconsistent with the provisions of the other Loan Documents, this Note shall control.

Section 25.    Assignment.  Lender may sell or offer to sell this Note, together with any and all documents guaranteeing, securing or executed in connection with this Note, to one or more assignees

without notice to or consent of Borrower. Lender is hereby authorized to share any information it has pertaining to the Loan evidenced by this Note, including without limitation credit information on the undersigned, any of its principals, or any guarantors of this Note, to any such assignee or prospective assignee.

Section 26.    Captions; Pronouns. Captions are for reference only and in no way limit the terms of this Note. The pronouns used in this instrument shall be construed as masculine, feminine, or neuter as the occasion may require. Use of the singular includes the plural, and vice versa.

Section 27.    Business Day. Any reference herein or in the Loan Agreement and/or the Security Documents to a day or business day shall be deemed to refer to a banking day which shall be a day on which Lender is open for the transaction of business, excluding any national holidays, and any performance which would otherwise be required on a day other than a banking day shall be timely performed in such instance, if performed on the next succeeding banking day. Notwithstanding such timely performance, interest shall continue to accrue hereunder until such payment or performance has been made.

Section 28.    Dispute Resolution Provision. This paragraph, including the subparagraphs below, is referred to as the "Dispute Resolution Provision." This Dispute Resolution Provision is a material inducement for the parties entering into this agreement.

(a)    This Dispute Resolution Provision concerns the resolution of any controversies or claims between the parties, whether arising in contract, tort or by statute, including but not limited to controversies or claims that arise out of or relate to: (i) this Note (including any renewals, extensions or modifications); or (ii) any document related to this Note (collectively a "Claim"). For the purposes of this Dispute Resolution Provision only, the term "parties" shall include any parent corporation, subsidiary or affiliate of the Lender involved in the servicing, management or administration of any obligation described or evidenced by this Note.

(b)    At the request of any party to this Note, any Claim shall be resolved by binding arbitration in accordance with the Federal Arbitration Act (Title 9, U.S. Code) (the "Act"). The Act will apply even though this Note provides that it is governed by the law of a specified state.

(c)    Arbitration proceedings will be determined in accordance with the Act, the then-current rules and procedures for the arbitration of financial services disputes of the American Arbitration Association or any successor thereof ("AAA"), and the terms of this Dispute Resolution Provision. In the event of any inconsistency, the terms of this Dispute Resolution Provision shall control. If AAA is unwilling or unable to (i) serve as the provider of arbitration or (ii) enforce any provision of this arbitration clause, the Lender may designate another arbitration organization with similar procedures to serve as the provider of arbitration.

(d)    The arbitration shall be administered by AAA and conducted, unless otherwise required by law, in any U.S. state where real or tangible personal property collateral for this credit is located or if there is no such collateral, in the state specified in the governing law section of this Note. All Claims shall be determined by one arbitrator; however, if Claims exceed Five Million Dollars ($5,000,000), upon the request of any party, the Claims shall be decided by three arbitrators. All arbitration hearings shall commence within ninety (90) days of the demand for arbitration and close within ninety (90) days of commencement and the award of the arbitrator(s) shall be issued within thirty (30) days of the close of the hearing. However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional sixty (60) days. The arbitrator(s) shall

provide a concise written statement of reasons for the award. The arbitration award may be submitted to any court having jurisdiction to be confirmed and have judgment entered and enforced.

(e)        The arbitrator(s) will give effect to statutes of limitation in determining any Claim and may dismiss the arbitration on the basis that the Claim is barred. For purposes of the application of any statutes of limitation, the service on AAA under applicable AAA rules of a notice of Claim is the equivalent of the filing of a lawsuit. Any dispute concerning this arbitration provision or whether a Claim is arbitrable shall be determined by the arbitrator(s), except as set forth at subparagraph (h) of this Dispute Resolution Provision. The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this Note.

(f)        This paragraph does not limit the right of any party to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or non-judicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights, or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies.

(g)        The filing of a court action is not intended to constitute a waiver of the right of any party, including the suing party, thereafter to require submittal of the Claim to arbitration.

(h)        Any arbitration or trial by a judge of any Claim will take place on an individual basis without resort to any form of class or representative action (the "Class Action Waiver"). Regardless of anything else in this Dispute Resolution Provision, the validity and effect of the Class Action Waiver may be determined only by a court and not by an arbitrator. The parties to this Note acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between the parties and is nonseverable from the agreement to arbitrate Claims. If the Class Action Waiver is limited, voided or found unenforceable, then the parties' agreement to arbitrate shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. **The Parties acknowledge and agree that under no circumstances will a class action be arbitrated.**

Section 29.     Waiver of Jury Trial. By agreeing to binding arbitration, the parties irrevocably and voluntarily waive any right they may have to a trial by jury in respect of any Claim. Furthermore, without intending in any way to limit this agreement to arbitrate, to the extent any Claim is not arbitrated, the parties irrevocably and voluntarily waive any right they may have to a trial by jury in respect of such Claim. This waiver of jury trial shall remain in effect even if the Class Action Waiver is limited, voided or found unenforceable. **WHETHER THE CLAIM IS DECIDED BY ARBITRATION OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS AGREEMENT IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY LAW.**

Section 30.   **THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES. (SIGNATURES ON FOLLOWING PAGE)**

**IN WITNESS WHEREOF,** Borrower has duly executed this Note under seal as of the date first above written.

BORROWER:

MISSION ROAD CHURCH OF GOD IN CHRIST, INC., a Florida non-profit corporation

By: _____
Larry E. Perkins
Its: President

*[SEAL]*

---

State of Florida Documentary Stamp Tax and Intangible Tax due on the indebtedness represented by this Note are affixed to (i) that certain Construction Mortgage given by Borrower in favor of Lender dated October 8, 2003, recorded in Official Records Book 5062, Page 1121, Public Records of Seminole County, Florida (ii) that certain Modification of Mortgage dated October 7, 2004, recorded in Official Records Book 5485, Page 391, Public Records of Seminole County, Florida, (iii) that certain Modification of Mortgage dated April 21, 2005, recorded in Official Records Book 5970, Page 1031, Public Records of Seminole County, Florida and (iv) that certain Notice of Future Advance and Mortgage Modification Agreement executed by Borrower in favor of Lender of even date herewith to be recorded in the Public Records of Seminole County, Florida.

---

MARYANNE MORSE, CLERK OF CIRCUIT COURT
SEMINOLE COUNTY
BK 05062 PG 1121
CLERK'S # 2003185924
RECORDED 10/15/2003 04:17:56 PM
MTG DOC TAX 3,746.40
INTANG TAX 2,140.80
RECORDING FEES 51.00
RECORDED BY G Harford

**WHEN RECORDED MAIL TO:**
Bank of America, N.A.
CCS-Small Business/Premier
FL9-100-02-10
P.O. Box 40329
Jacksonville, FL 32203-0329

MILLER, SOUTH, MILHAUSEN & CARR, P.A.
2699 Lee Road, Suite 120    2065-3 AH
Winter Park, Florida 32789

This Mortgage prepared by:

          Name:  Kimberly Levers/FL9-100-02-10, Document Administrator
          Company:  Bank of America, N.A.
          Address:  9000 Southside Boulevard, Jacksonville, FL 32256

---

# CONSTRUCTION MORTGAGE

## FUTURE ADVANCES

**MAXIMUM LIEN.** The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the maximum amount of principal indebtedness which may be outstanding at any one time shall not exceed $3,211,200.00, plus interest, and amounts expended or advanced by Lender for the payment of taxes, levies or insurance on the Property, and interest on such amounts.

**THIS MORTGAGE** dated October 8, 2003, is made and executed between Mission Road Church of God in Christ, Inc., a Non-profit corporation whose address is 151 Mission Road, Oviedo, FL 32762 (referred to below as "Grantor") and Bank of America, N.A., whose address is FL9-100-02-10, P.O. Box 40329, Jacksonville, FL 32203-0329 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "**Real Property**") located in Seminole County, State of Florida:

     See Exhibit "A", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

**The Real Property or its address is commonly known as 151 Mission Road, Oviedo, FL 32762.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**FUTURE ADVANCES.** Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor within twenty (20) years of the date of this Mortgage, together with all interest thereon; however, in no event shall such future advances (excluding interest) exceed in the aggregate $2,140,800.00.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $1,070,400.00, THE RELATED DOCUMENTS, AND THIS MORTGAGE.    THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH.    ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this


COMPOSITE
**EXHIBIT**



FILE   JM 2003185924
OR BOOK 05062   PAGE 1122

# MORTGAGE
## (Continued)

Page 2

Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

*Delete ?*

**CONSTRUCTION MORTGAGE.** This Mortgage is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of Florida.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**CONSTRUCTION LOAN.** If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Mortgage shall have priority over all possible liens, including those of material suppliers and workmen. Specifically, without limitation, this Mortgage secures all advances made under the Construction Loan Agreement between Grantor and Lender relating to the Property. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

# MORTGAGE
## (Continued)

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine

## MORTGAGE
### (Continued)

Page 4

the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

FIL⌐ NUM 2003185924
OR ⌐OK 05062    PAGE 1125

## MORTGAGE
### (Continued)

Page 5

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1)  Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2)  the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any related document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other

FILE NUM 2003185924
OR . OK 05062   PAGE 1126

# MORTGAGE
## (Continued)

obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender personally, or by Lender's agents or attorneys, may enter into and upon all or any part of the Property, and may exclude Grantor, Grantor's agents and servants wholly from the Property. Lender may use, operate, manage and control the Property. Lender shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Property and every part thereof, all of which shall for all purposes constitute property of Grantor. After deducting the expenses of conducting the business thereof, and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other property charges upon the Property or any part thereof, as well as just and reasonable compensation for the services of Lender. Lender shall apply such monies first to the payment of the principal of the Note, and the interest thereon, when and as the same shall become payable and second to the payment of any other sums required to be paid by Grantor under this Mortgage.

**Appoint Receiver.** In the event of a suit being instituted to foreclose this Mortgage, Lender shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of any or all of the Property, and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source. The parties agree that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases. Such appointment shall be made by the court as a matter of strict right to Lender and without notice to Grantor, and without reference to the adequacy or inadequacy of the value of the Property, or to Grantor's solvency or any other party defendant to such suit. Grantor hereby specifically waives the right to object to the appointment of a receiver and agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender, and consents to the appointment of any officer or employee of Lender as receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are

FIL□ NUM 2003185924
OR □OK 05062   PAGE 1127

# MORTGAGE
## (Continued)



necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ARBITRATION.** (a) This paragraph concerns the resolution of any controversies or claims between the parties, whether arising in contract, tort or by statute, including but not limited to controversies or claims that arise out of or relate to: (i) this agreement (including any renewals, extensions or modifications); or (ii) any document related to this agreement (collectively a "Claim"). For the purposes of this arbitration provision only, the term "parties" shall include any parent corporation, subsidiary or affiliate of the Bank involved in the servicing, management or administration of any obligation described or evidenced by this agreement.

(b)  At the request of any party to this agreement, any Claim shall be resolved by binding arbitration in accordance with the Federal Arbitration Act (Title 9, U. S. Code) (the "Act"). The Act will apply even though this agreement provides that it is governed by the law of a specified state.

(c)  Arbitration proceedings will be determined in accordance with the Act, the applicable rules and procedures for the arbitration of disputes of JAMS or any successor thereof ("JAMS"), and the terms of this paragraph. In the event of any inconsistency, the terms of this paragraph shall control.

(d)  The arbitration shall be administered by JAMS and conducted, unless otherwise required by law, in any U. S. state where real or tangible personal property collateral for this credit is located or if there is no such collateral, in the state specified in the governing law section of this agreement. All Claims shall be determined by one arbitrator; however, if Claims exceed $5,000,000, upon the request of any party, the Claims shall be decided by three arbitrators. All arbitration hearings shall commence within 90 days of the demand for arbitration and close within 90 days of commencement and the award of the arbitrator(s) shall be issued within 30 days of the close of the hearing. However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional 60 days. The arbitrator(s) shall provide a concise written statement of reasons for the award. The arbitration award may be submitted to any court having jurisdiction to be confirmed and enforced.

(e)  The arbitrator(s) will have the authority to decide whether any Claim is barred by the statute of limitations and, if so, to dismiss the arbitration on that basis. For purposes of the application of the statute of limitations, the service on JAMS under applicable JAMS rules of a notice of Claim is the equivalent of the filing of a lawsuit. Any dispute concerning this arbitration provision or whether a Claim is arbitratable shall be determined by the arbitrator(s). The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this agreement.

(f)  This paragraph does not limit the right of any party to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or nonjudicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights, or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies.

(g)  The filing of a court action is not intended to constitute a waiver of the right of any party, including the suing party, thereafter to require submittal of the Claim to arbitration.

**COUNTERPARTS.** This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

**GOVERNING LAW.** This Document will be governed by and interpreted in accordance with federal law and the laws of the State of Florida.

**APPRAISALS.** Grantor agrees to reimburse Lender for the cost of periodic appraisals of the Real Property, at such intervals as Lender may reasonably require. The appraisals may be performed by employees of Lender or by independent appraisers.

**FINAL AGREEMENT.** BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT:  (A) THIS DOCUMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF, (B) THIS DOCUMENT SUPERSEDES ANY COMMITMENT LETTER, TERM SHEET OR OTHER WRITTEN OUTLINE OF TERMS AND CONDITIONS RELATING TO THE SUBJECT MATTER HEREOF, UNLESS SUCH COMMITMENT LETTER, TERM SHEET OR OTHER WRITTEN OUTLINE OF TERMS AND CONDITIONS EXPRESSLY PROVIDES TO THE CONTRARY, (C) THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES, AND (D) THIS DOCUMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

## MORTGAGE
### (Continued)

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of any County, State of Florida.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Mission Road Church of God in Christ, Inc., and all other persons and entities signing the Note in whatever capacity.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Mission Road Church of God in Christ, Inc.,.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment

FILF NUM 2003185924
OR B⎵JK 05062    PAGE 1129

## MORTGAGE
### (Continued)

Page 9

when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower or Grantor or any other borrower, guarantor, pledgor, obligor or accommodation party is responsible under this Agreement or under any of the Related Documents, including any swap, option or forward obligations.

**Lender.** The word "Lender" means Bank of America, N.A., its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated October 8, 2003, **in the original principal amount of $1,070,400.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

GRANTOR:

MISSION ROAD CHURCH OF GOD IN CHRIST, INC.

By: _____
Larry E. Perkins, President of Mission Road Church of God in Christ, Inc.

WITNESSES:

X _____
Jocelyn Frank

X _____
AMANDA P. HILERIO

FIL  NUM 2003185924
OR  BOOK 05062    PAGE 1130

# MORTGAGE
## (Continued)

Page 10

## CORPORATE ACKNOWLEDGMENT

STATE OF ___Florida___ )
                                    ) SS
COUNTY OF ___Orange___ )

The foregoing instrument was acknowledged before me this ___8th___ day of ___October___, 20___ by Larry E. Perkins, President of Mission Road Church of God in Christ, Inc., a Florida corporation, on behalf of the corporation. He or she is personally known to me or has produced _____ as identification and did / did not take an oath.

_____
(Signature of Person Taking Acknowledgment)

**AMANDA P. HILERIO**
_____
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)

> AMANDA P. HILERIO
> MY COMMISSION # DD 215618
> EXPIRES: June 2, 2007
> Bonded Thru Notary Public Underwriters

LASER PRO Lending, Ver. 5.21.50.002  Copr. Harland Financial Solutions, Inc. 1997, 2003.  All Rights Reserved.  - FL  T:\REGAPPS\CLSC\G55LPL\CFI\LPL\G03.FC  TR 19237 PR-CMLODAC

FIL' IUM 2003185924
OR bUOK 05062    PAGE 1131

EXHIBIT "A"

Legal Description


Begin at the Northwest corner of the East ½ of the Southwest ¼ of the Southwest ¼ of Section 9, Township 21 South, Range 31 East, Seminole County, Florida, run thence South 89°43'58" East 463.22 feet, thence South 00°08'21" East 420.00 feet, thence South 89°43'58" East 210.00 feet, thence South 00°08'21" East 310.25 feet, thence North 89°44'51" West 200.00 feet, thence North 00°08'21" West 188.75 feet, thence North 89°44'51" West 472.11 feet, thence North 00°12'13" West 541.50 feet to the Northwest corner and the Point of Beginning; LESS AND EXCEPT Road Right-of-Way deeded to the State of Florida in Official Records Book 2269, Page 479.

AND

Beginning 1335 feet East and 440 feet North of the Southwest corner of the Southwest ¼ of the Southwest ¼ of Section 9, Township 21 South, Range 31 East, Seminole County, Florida, run North 150 feet, thence West 200 feet, thence South 150 feet, thence East 200 feet to the Point of Beginning.

MARYANN. MORSE, CLERK OF CIRCUIT COURT
SEMINOLE COUNTY
BK 05485 PGS 0391-0394
CLERK'S # 2004160264
RECORDED 10/15/2004 01:13:43 PM
MTG DOC TAX 348.60
INTANG TAX 199.20
RECORDING FEES 35.50
RECORDED BY t holden

**WHEN RECORDED MAIL TO:**
Bank of America, N.A.
FL9-100-02-10
P.O. Box 45247
Jacksonville, FL 32203-0329

---

This Modification of Mortgage prepared by:

Name: Syble Toole   FL9-100-02-15   (Ln#4573635), Document Administrator
Company: Bank of America, N.A.
Address: 9000 Southside Boulevard, Jacksonville, FL 32256-0771

---

# MODIFICATION OF MORTGAGE

**THIS MODIFICATION OF MORTGAGE** dated October 7, 2004, is made and executed between Mission Road Church of God in Christ, Inc., a Non-Profit corporation, whose address is 151 Mission Road, Oviedo, FL 32762 (referred to below as "Grantor") and Bank of America, N.A., whose address is FL9-100-02-10, P.O. Box 40329, Jacksonville, FL 32203-0329 (referred to below as "Lender").

**MORTGAGE.** Lender and Grantor have entered into a Mortgage dated October 8, 2003 (the "Mortgage") which has been recorded in Seminole County, State of Florida, as follows:

Recorded on October 15, 2003 in Book 05062, Page 1121, Public Records of Seminole County, Florida.

**REAL PROPERTY DESCRIPTION.** The Mortgage covers the following described real property located in Seminole County, State of Florida:

See Exhibit "A", which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as 151 Mission Road, Oviedo, FL 32762.

**MODIFICATION.** Lender and Grantor hereby modify the Mortgage as follows:

The paragraph titled "Maximum Lien" is amended to read as follows: The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the maximum amount of principal indebtedness which may be outstanding at any one time shall not exceed $2,340,000.00, plus interest, and amounts expended or advanced by Lender for the payment of taxes, levies or insurance on the Property, and interest on such amounts.

**FUTURE ADVANCES.** Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor within twenty (20) years of the date of this Mortgage, together with all interest thereon; however, in no event shall such future advances (excluding interest) exceed in the aggregate $1,170,000.00.

Grantor has requested and Lender has granted a Future Advance, under the Mortgage, of $99,600.00, which advance is evidenced by that Promissory Note dated October 7, 2004 in the amount of $1,170,000.00, (the "Note"). The Note renews and modifies a Promissory Note dated October 8, 2003 in the original principal amount of $1,070,400.00, (the "Prior Note") of which $1,070,400.00 is currently outstanding. The Note increases the unpaid principal balance of the Prior Note by $99,600.00, and Documentary Stamp Tax and Intangible Tax due as a result of such increase are remitted herewith. Documentary Stamp Tax and Intangible Tax due with respect to the Prior Note have been paid and are either affixed to the original Mortgage or the proper legend has been stated on the original Mortgage.

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

**ADDRESS FOR NOTICES.** Notwithstanding anything to the contrary herein, all notices and communications to the Lender shall be directed

# MODIFICATION OF MORTGAGE
## (Continued)

Loan No: 4573635

Page 2

to the following address:

> Bank of America, N.A.
> Jacksonville CCS; Attn: Notice Desk
> 9000 Southside Blvd., Bldg. 100, 3rd Floor
> Jacksonville, FL 32256.

**GOVERNING LAW.** This Document will be governed by and interpreted in accordance with federal law and the laws of the State of Florida.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF MORTGAGE IS DATED OCTOBER 7, 2004.**

**GRANTOR:**

**MISSION ROAD CHURCH OF GOD IN CHRIST, INC.**

By: _____
Larry E. Perkins, President of Mission Road Church of God in Christ, Inc.

**WITNESSES:**

x _____

x _____Valerie M. Oubre_____  Valerie M. oubre

**LENDER:**

x _____
Authorized Signer

---

## CORPORATE ACKNOWLEDGMENT

STATE OF _____FL_____          )
                              ) SS
COUNTY OF _____Seminole_____   )

The foregoing Instrument was acknowledged before me this _____7_____ day of _____October_____, 20 __04__ by Larry E. Perkins, President of Mission Road Church of God in Christ, Inc., a Florida corporation, on behalf of the corporation. He or she is personally known to me or has produced _____ as identification and  did / did not  take an oath.

_____
(Signature of Person Taking Acknowledgment)

_____Karen L Jacobs_____
(Name of Acknowledger Typed, Printed or Stamped)

_____VP Client Manager_____
(Title or Rank)

_____
(Serial Number, if any)

KAREN L. JACOBS
Notary Public, State of Florida
My comm. expires June 12, 2006
No. DD 125097

## MODIFICATION OF MORTGAGE
### (Continued)

Loan No: 4573635

Page 3

---

### LENDER ACKNOWLEDGMENT

STATE OF _Florida_      )
               ) SS
COUNTY OF _Orange_      )

The foregoing instrument was acknowledged before me this ___7___ day of ___Oct.___, 20_04_
by ___Karen Jacobs___. He or she is personally known to me or has produced _____
_____ as identification and did / did not take an oath.

_Valerie M. Oubre_
(Signature of Person Taking Acknowledgment)

_Valerie M. Oubre_
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)

VALERIE M. OUBRE
Notary Public, State of Florida
My ___ ___pires April 8, 2005
No. DD 074271

---

LASER PRO Lending, Ver. 5.33.20.102 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved. - FL T:\TREDAPPS\CLFC\GSSLPL\CF\\LPL\G201.FC TR-30261 PR-CMLOCMC

THIS INSTRUMENT PREPARED BY
AND SHOULD BE RETURNED TO:

April Hayden, Esq.
FOLEY & LARDNER LLP
111 North Orange Avenue, Suite 1800
Post Office Box 2193
Orlando, FL 32802-2193
(407) 423-7656

MARYANNE MORSE, CLERK OF CIRCUIT COURT
SEMINOLE COUNTY
BK 06848 Pgs 0120 - 123; (4pgs)
CLERK'S # 2007149792
RECORDED 10/22/2007 08:19:22 AM
MTG DOC TAX 203.00
INTANG TAX 116.00
RECORDING FEES 35.50
RECORDED BY H DeVore

For Recording Purposes Only

## NOTICE OF FUTURE ADVANCE AND MORTGAGE MODIFICATION AGREEMENT

THIS NOTICE OF FUTURE ADVANCE AND MORTGAGE MODIFICATION AGREEMENT (this "Agreement") is executed to be effective as of the 10th day of October, 2007, by and between MISSION ROAD CHURCH OF GOD IN CHRIST, INC., a Florida non-profit corporation, whose address is 151 Mission Road, Oviedo, Florida 32762 ("Grantor"), and BANK OF AMERICA, N.A., a national banking association, whose address FL9-100-02-10, P.O. Box 40329, Jacksonville, Florida 32203-0329 ("Lender"). Terms used but not otherwise defined herein shall have the meanings given to them in the Construction Loan Agreement.

### R E C I T A L S

1.      WHEREAS, Lender is the owner and holder of that certain Construction Mortgage given by Grantor in favor of Lender dated October 8, 2003, recorded in Official Records Book 5062, Page 1121, Public Records of Seminole County, Florida, as amended by (a) that certain Modification of Mortgage dated October 7, 2004, recorded in Official Records Book 5485, Page 391, Public Records of Seminole County, Florida, and (b) that certain Modification of Mortgage dated April 21, 2005, recorded in Official Records Book 5970, Page 1031, Public Records of Seminole County, Florida (as modified, the "Mortgage"). The Mortgage presently secures the indebtedness of Grantor under that certain Promissory Note, dated as of October 8, 2003 in the original principal amount of ONE MILLION SEVENTY THOUSAND FOUR HUNDRED AND NO/100 DOLLARS ($1,070,400.00), as amended and restated by that certain Promissory Note dated as of October 7, 2004 in the original principal amount of ONE MILLION ONE HUNDRED SEVENTY THOUSAND AND NO/100 DOLLARS ($1,170,000.00), as amended and restated by that certain Promissory Note dated April 21, 2005 in the original principal amount of ONE MILLION FIVE HUNDRED FORTY NINE THOUSAND SEVEN HUNDRED SIXTY TWO AND NO/100 DOLLARS ($1,549,762.00) (collectively, the "Prior Note" evidencing the "Loan") to be modified by the Amended Note, as hereinafter defined.

2.      WHEREAS, sums have been disbursed to Grantor pursuant to that certain Amended and Restated Future Advance Promissory Note in the original principal amount of ONE MILLION SIX HUNDRED SEVEN THOUSAND SEVEN HUNDRED SIXTY TWO AND NO/100 DOLLARS ($1,607,762.00) (the "Amended Note") given by Grantor in favor of Lender of even date herewith, which renews and restates the Prior Note. The Amended Note was executed pursuant to that certain Construction Loan Agreement dated October 8, 2003, by and between Grantor and Lender, as amended

ORLA_595332.2

by that certain Amendment to Construction Loan Agreement dated October 7, 2004, as amended by that certain Second Amendment to Construction Loan Agreement dated April 21, 2005 by and between Grantor and Lender and as further amended by that certain Third Amendment to Construction Loan Agreement and Other Loan Documents of even date herewith by and between Grantor and Lender (collectively, the "Loan Agreement").

3.    **WHEREAS,** in addition to the Prior Note, the Loan Agreement and the Mortgage, Grantor and Lender have executed other documents in connection with the Loan (collectively called the "Other Loan Documents");

4.    **WHEREAS,** Section I of the Mortgage titled "Maximum Lien" provides that Lender may make future advances from time to time so long as the aggregate amount of the indebtedness that is secured by the Mortgage, or other obligations secured thereby, do not exceed $3,211,200.00.

5.    **WHEREAS** in May of 2006, Grantor previously defaulted under the Loan (the "Default") and Grantor and Lender subsequently entered into that certain Short Term Forbearance Agreement dated January 24, 2007, which granted Grantor an extension of Lender's forbearance in exchange for a fee to Lender; and

6.    **WHEREAS,** Grantor is the owner in fee simple of all of the property encumbered by the Mortgage, and has requested Lender to modify the Mortgage by (i) making the Future Advance (the "Future Advance") pursuant to the Amended Note, under and to be secured by the Mortgage and Financing Statements, in the original principal amount of **FIFTY EIGHT THOUSAND AND NO/100 DOLLARS ($58,000.00)** and (ii) modifying the Mortgage and Other Loan Documents executed therewith, as more particularly described herein

**NOW, THEREFORE,** in consideration of the mutual covenants hereinafter set forth and in consideration of valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto mutually covenant and agree as follows:

(a)    **Recitals.** The foregoing recitals are true and correct and are incorporated herein by this reference.

(b)    **Current balance.** As of the date hereof, the current outstanding principal balance of the Prior Note is **ONE MILLION THREE HUNDRED SIXTY SIX THOUSAND ONE HUNDRED ONE AND 89/100 DOLLARS ($1,366,101.89).** Interest thereon is to be paid through the date hereof from the proceeds of the Future Advance.

(c)    **Renewal and Notice of Future Advance.** Grantor and Lender hereby agree to renew, amend, and restate the amount due under the Prior Note and as evidence thereof, and in order to evidence the Future Advance, Grantor has executed and delivered to Lender the Amended Note, which renews the outstanding principal balance of the Prior Note, evidences the Future Advance and amends the terms of repayment. The Prior Note and the Amended Note may sometimes be referred to herein collectively as the "Note".

(d)    **Note Secured By Mortgage.** Grantor hereby acknowledges and agrees that all amounts due from time to time under the Note, including, without limitation, the additional **FIFTY EIGHT THOUSAND 0/100 DOLLARS ($58,000.00)** of additional indebtedness represented by the Amended Note shall be secured by the Mortgage, as modified herein, to the same extent as if the Note was executed and delivered by Grantor on the date the Mortgage was originally executed.

2

(e)    **Modifications**.

(i)    The Mortgage and the Other Loan Documents are hereby revised to modify the definition of "Note" set forth herein, to include the Amended Note, and to include the following instruments in the definition of "Loan Documents": (i) this Agreement; (ii) the Second Amendment; (iii) the Waiver and Release executed by Grantor to and in favor of Lender of even date herewith (iv) the UCC-1 Financing Statements in favor of Lender as Secured Party to be recorded, and (iv) all other documents executed in connection therewith to reflect and evidence all of the changes made by this Agreement and the Second Amendment.

(ii)    The Section titled "Construction Mortgage" on page two of the Mortgage is hereby deleted in its entirety.

(f)    **Reaffirmation**.  Grantor hereby reaffirms all of its obligations set forth in the Note, the Loan Agreement, the Mortgage, and the Other Loan Documents, as renewed and modified, and agrees to perform each and every covenant, agreement and obligation set forth therein, and agrees to be bound by each and all of the terms and provisions thereof.  Grantor shall pay and hold harmless Lender from any Florida Documentary Stamp Taxes or Intangible Taxes, inclusive of any penalties and interest thereon, resulting from or related to the execution and/or recording of this Agreement and/or as a result of the transaction evidenced thereby.

(g)    **Lien of Mortgage**.  All of the property described in the Mortgage, as modified, shall in all respects be subject to the lien, charge and encumbrance of the Mortgage and nothing herein contained (excepting additions or deletions to or from the Mortgaged Property expressly made) shall affect the lien, charge or encumbrance of the Mortgage, or the first priority of the Mortgage over any other liens, charges, encumbrances or conveyances.

(h)    **No Other Changes**.  Except as provided in this Agreement, all of the terms and conditions of the Mortgage are unchanged and remain in full force and effect.  The parties hereto intend that this Agreement be considered a continuation and extension of the Loan and the Mortgage, and not a novation.  The lien priority of the Mortgage, shall not be impaired or affected in any way by this Agreement or the Amended Note.

(i)    **Warranties and Representations**.  Grantor warrants that Grantor is the owner of the Property described in the Mortgage, that there are no other liens or claims against the Property, that the Mortgage, as modified herein, secures the payment of the indebtedness represented by the Note, that the Mortgage, as modified herein, is binding upon Grantor, its successors, assigns and legal representatives, that Lender has fully performed its obligations under the Note and the Mortgage, and that Grantor has no claims or offsets against Lender, the indebtedness evidenced by the Note, the obligations under the Mortgage, or the obligations under any of the Other Loan Documents, as modified.

(j)    **Rights Against Third Parties**.  All of Lender's rights against all parties, including, but not limited to, all parties secondarily liable, are hereby reserved.

(k)    **Successors and Assigns**.  This Agreement shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the respective parties hereto.

**IN WITNESS WHEREOF**, this Agreement has been duly executed by the parties hereto the day and year first above written.

Signed, sealed and delivered
in the presence of:

**GRANTOR:**

**MISSION ROAD CHURCH OF GOD IN CHRIST, INC.**, a Florida non-profit corporation

Print Name: _April M Hayden_

By: _____
      Larry E. Perkins, President

Print Name: _Terri Walker_

**LENDER:**

Not necessary

**BANK OF AMERICA, N.A.**, a national banking association

Print Name:_____

By:_____

Name:_____

Print Name:_____

Title:_____

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me this 10th day of October, 2007, by Larry E. Perkins, as President of **MISSION ROAD CHURCH OF GOD IN CHRIST, INC.**, a Florida corporation, on behalf of the corporation.

_____
Signature of Notary Public

_April M. Hayden_
(Print Notary Name)

AFFIX NOTARY STAMP

My Commission Expires:_____
Commission No.:_____
☐ Personally known, or
☐ Produced Identification
Type of Identification Produced
_____

NOTARY PUBLIC-STATE OF FLORIDA
April Hayden
Commission # DD472360
Expires: SEP. 15, 2009
Bonded Thru Atlantic Bonding Co., Inc.

4

BANK: 21    AP: 1    OBGOR: 0004573635    OBGAT: 0000000273    MISSION ROAD CH
DATE:         CHG CODE:          INVOICE/ITEM:                 PAGE:
BAL TYPE: 000    PRINCIPAL

| TRAN CODE | DESCRIPTION | EFFECT DATE | RATE--OR--TRAN AMT | RUNNING BALANCE |
|---|---|---|---|---|
|  | BALANCE FORWARD | 07-01-04 |  | 455,032.77 |
| 1350 | NEW ACCRUAL | 07-01-04 | 6.25000000 | 455,032.77 |
| 4022 | CURR INT PAYMNT | 07-08-04 | 2,246.45- |  |
| 3902 | ADVANCE PRINC | 07-20-04 | 31,084.40 | 486,117.17 |
| 4022 | CURR INT PAYMNT | 08-08-04 | 2,551.50- |  |
| 1350 | NEW ACCRUAL | 08-11-04 | 6.50000000 |  |
| 3902 | ADVANCE PRINC | 08-11-04 | 58,095.90 | 544,213.07 |
| 3902 | ADVANCE PRINC | 09-08-04 | 113,449.30 | 657,662.37 |
| 4022 | CURR INT PAYMNT | 09-08-04 | 3,004.48- |  |
| 1350 | NEW ACCRUAL | 09-22-04 | 6.75000000 |  |
| 3902 | ADVANCE PRINC | 10-07-04 | 736,931.67 | 1,394,594.04 |
| 4052 | RENEWAL PAYOFF | 10-07-04 | 736,931.67- | 657,662.37 |
| 3902 | ADVANCE PRINC | 10-08-04 | 79,269.30 | 736,931.67 |
| 4022 | CURR INT PAYMNT | 10-08-04 | 3,635.41- |  |
| 4022 | CURR INT PAYMNT | 11-08-04 | 4,283.42- |  |
| 1350 | NEW ACCRUAL | 11-10-04 | 7.00000000 |  |
| 3902 | ADVANCE PRINC | 11-10-04 | 127,055.70 | 863,987.37 |



EXHIBIT
M

LOAN REQ: 0464          OFFICER INQUIRY          PAGE 0002 OF 0005
BANK: 21      AP: 1      OBGOR: 0004573635      OBGAT: 0000000273      MISSION ROAD CH
DATE:          CHG CODE:          INVOICE/ITEM:          PAGE:
BAL TYPE: 000          PRINCIPAL

| TRAN CODE | DESCRIPTION | EFFECT DATE | RATE--OR--TRAN AMT | RUNNING BALANCE |
|---|---|---|---|---|
| 3902 | ADVANCE PRINC | 11-18-04 | 50,240.00 | 914,227.37 |
| 3902 | ADVANCE PRINC | 12-07-04 | 47,760.00 | 961,987.37 |
| 4022 | CURR INT PAYMNT | 12-08-04 | 5,175.66- | |
| 1350 | NEW ACCRUAL | 12-14-04 | 7.25000000 | |
| 1350 | NEW ACCRUAL | 12-30-04 | 7.25000000 | |
| 3902 | ADVANCE PRINC | 01-03-05 | 85,366.20 | 1,047,353.57 |
| 4022 | CURR INT PAYMNT | 01-08-05 | 5,974.94- | |
| 3902 | ADVANCE PRINC | 01-13-05 | 1,600.00 | 1,048,953.57 |
| 3902 | ADVANCE PRINC | 01-25-05 | 21,600.00 | 1,070,553.57 |
| 1350 | NEW ACCRUAL | 02-02-05 | 7.50000000 | 1,070,553.57 |
| 1350 | NEW ACCRUAL | 02-02-05 | 7.50000000 | 1,070,553.57 |
| 4022 | CURR INT PAYMNT | 02-08-05 | 6,693.92- | |
| 4022 | CURR INT PAYMNT | 03-08-05 | 6,289.51- | |
| 3902 | ADVANCE PRINC | 03-11-05 | 24,080.40 | 1,094,633.97 |
| 1350 | NEW ACCRUAL | 03-22-05 | 7.75000000 | 1,094,633.97 |
| 1350 | NEW ACCRUAL | 03-22-05 | 7.75000000 | 1,094,633.97 |
| 4022 | CURR INT PAYMNT | 04-08-05 | 7,183.68- | |

```
LOAN REQ: 0464          OFFICER INQUIRY              PAGE 0003 OF 0005
BANK: 21     AP: 1   OBGOR: 0004573635   OBGAT: 0000000273   MISSION ROAD CH
DATE:           CHG CODE:        INVOICE/ITEM:               PAGE:
BAL TYPE: 000        PRINCIPAL
TRAN   DESCRIPTION      EFFECT                                    RUNNING
CODE                    DATE      RATE--OR--TRAN AMT             BALANCE
3902 ADVANCE PRINC     04-14-05          67,500.00          1,162,133.97
1350 NEW ACCRUAL       04-21-05   7.75000000               1,162,133.97
3902 ADVANCE PRINC     04-21-05        1,162,133.97         2,324,267.94
4052 RENEWAL PAYOFF    04-21-05        1,162,133.97-        1,162,133.97
4032 CUR FLAT FEE PY   04-23-05            1,898.81-
3902 ADVANCE PRINC     04-29-05           91,800.00         1,253,933.97
1350 NEW ACCRUAL       05-03-05   8.00000000               1,253,933.97
1350 NEW ACCRUAL       05-03-05   8.00000000               1,253,933.97
4022 CURR INT PAYMNT   05-08-05            7,596.13-
3902 ADVANCE PRINC     06-03-05           75,600.00         1,329,533.97
4022 CURR INT PAYMNT   06-08-05            8,681.75-
1350 NEW ACCRUAL       06-30-05   8.25000000
1350 NEW ACCRUAL       06-30-05   8.25000000
4022 CURR INT PAYMNT   07-08-05            9,021.42-
1350 NEW ACCRUAL       07-09-05   6.87500000
1350 NEW ACCRUAL       07-09-05   6.87500000
3902 ADVANCE PRINC     08-05-05           31,950.00         1,361,483.97
```

| TRAN CODE | DESCRIPTION | EFFECT DATE | RATE--OR--TRAN AMT | RUNNING BALANCE |
|---|---|---|---|---|
| 4022 | CURR INT PAYMNT | 08-08-05 | 9,445.23- | |
| 4042 | CURR PRIN PYMNT | 08-08-05 | 4,464.46- | 1,357,019.51 |
| 1350 | NEW ACCRUAL | 08-09-05 | 8.50000000 | 1,357,019.51 |
| 4022 | CURR INT PAYMNT | 09-08-05 | 9,945.17- | |
| 4042 | CURR PRIN PYMNT | 09-08-05 | 3,964.52- | 1,353,054.99 |
| 3902 | ADVANCE PRINC | 09-09-05 | 34,200.00 | 1,387,254.99 |
| 4022 | CURR INT PAYMNT | 10-08-05 | 4,524.74- | |
| 4042 | CURR PRIN PYMNT | 10-08-05 | 9,384.95- | 1,377,870.04 |
| 4022 | CURR INT PAYMNT | 11-08-05 | 8,157.18- | |
| 4042 | CURR PRIN PYMNT | 11-08-05 | 5,752.51- | 1,372,117.53 |
| 4522 | INT PAYMNT RVSL | 11-08-05 | 8,157.18 | |
| 4542 | PRIN PYMNT RVSL | 11-08-05 | 5,752.51 | 1,377,870.04 |
| 4022 | CURR INT PAYMNT | 12-08-05 | 16,051.23- | |
| 4042 | CURR PRIN PYMNT | 12-08-05 | 11,768.15- | 1,366,101.89 |
| 4522 | INT PAYMNT RVSL | 12-08-05 | 16,051.23 | |
| 4542 | PRIN PYMNT RVSL | 12-08-05 | 11,768.15 | 1,377,870.04 |
| 4022 | CURR INT PAYMNT | 01-08-06 | 24,208.41- | |

LOAN REQ: 0460    OFFICER INQUIRY    PAGE 0005 OF 0005
BANK: 21    AP: 1    OBGOR: 0004573635    OBGAT: 0000000273    MISSION ROAD CH
DATE:              CHG CODE:          INVOICE/ITEM:                      PAGE:
BAL TYPE: 000        PRINCIPAL

| TRAN CODE | DESCRIPTION | EFFECT DATE | RATE--OR--TRAN AMT | RUNNING BALANCE |
|-----------|-------------|-------------|--------------------|-----------------|
| 4042 | CURR PRIN PYMNT | 01-08-06 | 17,520.66- | 1,360,349.38 |
| 4522 | INT PAYMNT RVSL | 01-08-06 | 24,208.41 | |
| 4542 | PRIN PYMNT RVSL | 01-08-06 | 17,520.66 | 1,377,870.04 |
| 4022 | CURR INT PAYMNT | 01-13-06 | 8,157.18- | |
| 4042 | CURR PRIN PYMNT | 01-13-06 | 5,752.51- | 1,372,117.53 |

IN THE CIRCUIT COURT OF THE EIGHTEENTH
JUDICIAL CIRCUIT IN AND FOR SEMINOLE
COUNTY, FLORIDA

BANK OF AMERICA, N.A.

    Plaintiff,

VS.                    CASE # 09-CA-7825-14-L

MISSION ROAD CHURCH OF GOD
IN CHRIST et al.,

    Defendants

---

### MEDIATED SETTLEMENT AGREEMENT

THIS MEDIATED SETTLEMENT AGREEMENT ("Agreement") is made this 8th day of June, 2010 by and between the above named parties and in consideration of the mutual promises contained herein and other adequate consideration do hereby agree as follows:

1. Defendant shall, contemporaneously with this Agreement, pay to Plaintiff the sum of $57,516.08 to be applied to the outstanding debt at issue. In the event that this Agreement is made null and void as described in paragraph 5, below, this sum shall not be refundable.
2. The parties agree that Plaintiff shall not proceed with the above-captioned action or collections of funds at issue for a period of four months, or until October 8, 2010, in order to allow Defendant time to refinance the subject property with an alternative lender.
3. In the event Defendant fails to refinance the loan at issue on or before October 8, 2010, Defendant agrees to the entry of judgment on all claims in the above-captioned action without further notice to Defendant.
4. Defendant hereby grants Plaintiff access to the subject property for purposes of obtaining an appraisal and an environmental assessment report, provided Plaintiff receives 24 hours prior notice.
5. In the event Defendant files bankruptcy any time prior to October 8, 2010, this agreement shall become null and void.
6. Defendant shall within 10 days of execution of this agreement submit a letter reasonably satisfactory to Plaintiff and signed by Defendant's Board of Elders and Board of Trustees acknowledging the existence of this cause of action and the terms of this settlement agreement, including the acknowledgment of the following:
   a. the above-captioned lawsuit;
   b. the hearing on Plaintiff's motion for summary judgment, which was scheduled to occur on June 14, 2010;



EXHIBIT

N

    c. the occurrence of the mediation of the disputes at issue in the above-captioned action on June 8, 2010, and the acknowledgement of the terms contained in this Agreement;

    d. and that should a judgment be entered and a foreclosure sale occur, such foreclosure may occur during religious holidays, school holidays, or the academic school year.

7. All rights and obligations provide for in the loan documents at issue shall remain in full force and effect subject to this agreement, including but not limited to, the requirement for insurance coverage on the property at issue.

Parties shall file a voluntary dismissal of this action with prejudice within ten (10) days of satisfaction of the outstanding amount owed under the loan documents at issue.

Should either party employ an attorney to enforce any provision hereof or to protect its interests in any matter arising out of or related to this Agreement, the prevailing party shall be entitled to all reasonable costs, charges, expenses, including attorneys fees, through any appellate proceeding, expended or incurred in connection therewith.

All parties acknowledge that they have read and reviewed the foregoing Settlement Agreement and have had the assistance of counsel and hereby acknowledge and affirm that they have entered into this Agreement voluntarily and without duress and that they are literate in the English Language.

MUTUALLY AGREED TO THIS 8th DAY OF JUNE, 2010

Plaintiff, Bank of America, N.A.
By Julie A. Smith, SVP

Defendant, Mission Road Church of God
in Christ, Inc.
By Larry E. Perkins, President

Samantha R. Powers, Esq.,
Plaintiff's Attorney

Damon Chase, Esq.
Defendant's Attorney

Richard F. Joyce, Esq.
Certified Circuit Civil Mediator

**MISSION ROAD CHURCH OF GOD IN CHRIST**
PH. 407-365-7437
P.O. BOX 620188
OVIEDO, FL 32762-0188

6846

63-554/631
BRANCH 01

6-8-10

Date

Pay to the
Order of _Bank of America_____ $ 57,516.08

_Fifty Seven Thousand - Five hundred + Sixteen + 08/100____ Dollars

*Citizens*
BANK of FLORIDA   Independent Thinking
Independent Banking
www.mycbfl.com
Citizens On Call 407-365-1684

For _21- 457363 5 -273_

⑆063105544⑆ 04⑈139⑈4⑈   6846

## ACKNOWLEDGMENT OF MEDIATED SETTLEMENT AGREEMENT

By my signature below, I acknowledge the terms of the attached Mediated Settlement Agreement, made on June 8, 2010, by and between Mission Road Church of God in Christ, Inc. ("Mission Road") and Bank of America, N.A. ("Bank of America"), and the related facts and circumstances as follows:

1.  On or about September 17, 2009, Bank of America filed a foreclosure action against Mission Road related to Mission Road's default on a loan, whereby it owed Bank of America the outstanding principal amount of $1,543,034.20, excluding certain fees and interest.

2.  Bank of America filed a motion for summary judgment, seeking a judgment from the court in Bank of America's favor on all claims against Mission Road in the aforementioned lawsuit. The hearing on this motion was scheduled to occur on June 14, 2010.

3.  On June 8, 2010, representatives of Bank of America and Mission Road met in an attempt to resolve the disputes at issue in the lawsuit through mediation.

4.  In settlement of the lawsuit, Bank of America and Mission Road mutually agreed as set forth in the Mediated Settlement Agreement, a copy of which is attached hereto.

5.  Should Mission Road fail to refinance the loan at issue, as agreed in the Mediated Settlement Agreement, Mission Road has agreed to entry of a judgment on all claims in the lawsuit, which will ultimately result in a foreclosure sale of the church property.

6.  Should a judgment be entered and a foreclosure sale occur, as described in paragraph 5 above, such foreclosure may occur during religious holidays, school holidays, or the academic school year.

| Date | Printed Name | Signature |
|------|--------------|-----------|
| 7-14-10 | Larry Perkins | |
| 7-18-10 | Kip Dencha | |
| 7-18-10 | Darryl Davis | |
| 7-18-10 | Tony Turner | |
| 7-18-10 | Adolphus Vann | |

EXHIBIT

O